## BONNER v. LOUISIANA CENTRAL LUM-
### BER CO.*
### No. 5019.

Court of Appeal of Louisiana.   Second
Circuit.
April 1, 1935.

Julius T. Long, of Shreveport, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, Judge.

Plaintiff has appealed from a judgment rejecting his demand for damages against defendant company.  An alternative demand for compensation, under Act No. 20 of 1914, as amended, was dismissed on an exception of . no cause of action.  Plaintiff does not complain . of this ruling, and could not reasonably do so, as he was not an employee at the time of the accident.

We are favored with a well-considered written opinion by the trial judge.  His conclusions of fact are supported by .testimony in the case, at least to the extent that we do not find them manifestly incorrect.  As his findings of law are in full accord with our jurisprudence, as contained in the cases cited, we quote the opinion in full and adopt it as our own:

"Thomas B. Bonner, plaintiff, brings this action in tort against the defendant, Louisiana Central Lumber Company, alleging damages for personal injuries in the sum of $25,-.000.  In the alternative, he asks redress for his injuries, under the Workmen's Compensation Act, in the sum of $5.85 per week for a period of 400 weeks.

"An exception of no right or cause of action to the latter alternative plea has heretofore been sustained, and the court now has before it only the tort action for consideration.

"The plaintiff alleges the following facts as the basis for his damages:

"That, prior to July 22, 1933, and as an employee of the defendant company, he had saved up $200 of his wages and had deposited the same with the defendant company at its main office at Clarks, La., some 25 miles distant from plaintiff's place of abode at Webb, La.; that on the 22d day of July, 1933, finding himself in need of money, he phoned defendant's office at Clarks, and was advised and requested by the defendant or its agent to come to Clarks on its (defendant's) . log train, then running between Webb and Clarks; that as an invited passenger, and while riding in the caboose at the rear of a log train of some 35 cars, belonging to the defendant company, the caboose and flat car immediately ahead were derailed, and plaintiff was seriously and permanently injured; that the cause of the derailment and injury to petitioner was by reason of the rotten and defective condition of the cross-ties and rails; that defendant had knowledge of this defective condition for many weeks before the accident.

"The defendant company admits the accident, but denies the extent of injury and any and all liability therefor, for the reason that

plaintiff was aboard its train without the authority or consent of defendant company; that its log road was used exclusively for logging purposes, and no passengers permitted except employees going to and from work; that plaintiff was not an employee, and knew the company's rules as well as the danger incident to riding log trains, and therefore assumed all risk when he boarded said train.

"On trial of the above issues, the court finds the following to be the facts:

"The plaintiff, Bonner, was not in the employ of the defendant company at the time of the accident; that some months prior thereto he had received an eye injury for which he had been paid compensation and had deposited the same for safe-keeping with the defendant company at its office at Clarks, La., with instructions to the defendant to permit no withdrawals therefrom except by the plaintiff in person. On the morning of the alleged accident, plaintiff, finding himself in need of funds, phoned the defendant's bookkeeper at Clarks to send him a portion of this money. This request was refused with the explanation that the company did not possess adequate facilities for sending money from Clarks to Webb, La., and with the further reminder of the prior instructions to pay to plaintiff in person only. Whereupon the plaintiff boarded defendant's log train at Webb, and, while riding in the caboose, the log car immediately ahead and the caboose were derailed, and plaintiff received the injury herein alleged upon.

"The plaintiff contends that he was instructed, or had permission from the defendant's agent, to ride this log train to Clarks; that it was the custom at the company camp to use these log trains for passenger purposes without permission. To support this contention, we have the testimony of the plaintiff to the effect that the defendant's bookkeeper, Mr. Wysinger, suggested, 'the train runs five days a week.' This testimony is denied by the bookkeeper and others. After a careful analysis of the testimony of this issue, the court is forced to the conclusion that the plaintiff did not have permission from the defendant to ride this train at the time of the accident, at least not from one possessing authority to grant such permission.

"The evidence discloses that defendant's log trains were well posted with warning signs prohibiting passengers thereon, other than employees going to and from work and those with specially granted permission. It is further shown by the evidence that such a posted sign was removed from the very caboose on which the plaintiff was riding after the wreck. Without doubt, this rule and regulation had often been violated, but the fact remains that there was such a rule and regulation and well posted for all to see. Plaintiff was an old employee of the company, and, notwithstanding his denial of the fact, it is most difficult for this court to conclude that he did not have knowledge of this prohibition.

"In view of these findings of facts, it is the conclusion of this court that the status of the plaintiff at the time of the accident was, to say the least, that of an uninvited guest. The most favorable interpretation that could be placed thereon would be that of a licensee.

"The next question for determination is, What duty and the degree of care would the defendant owe this plaintiff under the above findings? The general rule is that a carrier owes no duty to a licensee or a person of the status of this plaintiff, other than to abstain from willful or wanton injury.

"Under facts and circumstances similar to the present, our courts have held that, though the act resulting in injury was solely and exclusively due to the gross fault and negligence of the defendant, there is no liability. Leverett v. White Sulphur Lumber Company, 142 La. 884, 77 So. 779; Holmes v. Crowell & Spencer Company, 51 La. Ann. 352, 25 So. 265; Tommie v. Little River Lumber Company, 136 La. 651, 67 So. 539.

"The court is convinced that the cause of the accident, and the resulting injury therefrom, was due to a defective condition of a rail or rails on defendant's tracks. There is some evidence tending to show that defendant had prior knowledge of these defects, but the character of this evidence and its general uncertainty, when considered, together with the physical facts of this accident, is such that the court must conclude that any negligence on the part of this defendant was not such a degree that it would be liable to one in the status of this plaintiff.

"In view of the above findings of fact and law, it is ordered, adjudged, and decreed that the plaintiff's demands be rejected, at his costs.

"R. R. Reeves,
"District Judge."

For the reasons assigned above, the judgment of the lower court is affirmed.